IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

PAULA LOU WALKER,                     )
  by and through Justin Walker,        )
                                 )
        Plaintiff,                  )
                                 )
                                 )     CIV-07-539-HE
v.                                    )
                                 )
MICHAEL J. ASTRUE,                    )
  Commissioner of Social Security      )
   Administration,                     )
                                 )
        Defendant.                  )

## REPORT AND RECOMMENDATION

Justin Walker, the surviving daughter of the deceased claimant Paula Lou Walker ("Plaintiff"), seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying the Plaintiff's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423.[1] Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues.  The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).  For the following reasons, it is recommended that the Commissioner's decision be affirmed.

---

[1]See Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 350 (7th Cir. 2005)(recognizing that "applications under Title II do not automatically expire upon the death of a claimant if a party in interest (including a beneficiary) is able to maintain the integrity of the application.")(citing 20 C.F.R. § 404.503).

I. Procedural History

This case has an extensive procedural history beginning with Plaintiff's previous applications for Title II and Title XVI benefits filed with the agency on October 7, 1996.[2] (TR 60-63, 300-301).   In those applications, Plaintiff alleged that she became disabled on August15, 1996. (TR 60, 300).  She alleged disability due to chronic obstructive pulmonary disease ("COPD") requiring constant oxygen, diabetes, migraine headaches, sleep apnea, asthma, emphysema, high blood pressure, and back problems. (TR 71).   Following an administrative hearing, Administrative Law Judge Darks ("ALJ Darks") issued a decision on August 27, 1999.  ALJ Darks found that Plaintiff was not disabled within the meaning of the Social Security Act. (TR 16-29).  Plaintiff's request for review of ALJ Darks' decision was rejected by the Appeals Council. (TR 6-7).  Plaintiff appealed the final decision in federal district court, and on August 13, 2002, the District Court for the Northern District of Texas affirmed ALJ Darks' decision. (TR 382L, 495).

Plaintiff filed another application for Title II benefits on September 5, 2002, and she filed another application for Title XVI benefits on August 21, 2002 (protective filing date). (TR 418, 981-982).  Plaintiff again alleged that she became disabled on August 15, 1996. (TR 418, 981).  The agency found Plaintiff to be insured for the purpose of her Title II disability insurance benefits application only through December 31, 2001. (TR 382L, 438). The agency granted Plaintiff's application for Title XVI supplemental security income

---

[2]The Plaintiff's applications were protectively filed on August 22, 1996. (TR 16).

benefits in June 2003 based upon the finding that Plaintiff became disabled on August 21, 2002 (her Title XVI application date) because her pulmonary impairment satisfied the criteria of Listing 3.02A on that date. (TR 382L, 1045).

Following a hearing conducted August 10, 2004, and a supplemental hearing conducted April 14, 2005 (TR 999-1060), Administrative Law Judge Bennett ("ALJ Bennett") issued a decision on September 23, 2005, denying Plaintiff's application for Title II benefits. (TR 382L-382S).  ALJ Bennett found that the previous administrative decision was final and binding, that the relevant period of time for adjudicating Plaintiff's Title II application therefore began on August 27, 1999, and that Plaintiff's insured status for the purpose of Title II benefits expired on December 31, 2001. (TR 382L).  Considering the evidence in the record, ALJ Bennett found that between August 27, 1999, and April 30, 2002, Plaintiff retained the residual functional capacity to perform her previous job as a travel agent. (TR 382R-382S).  Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant period of time between August 27, 1999, and December 31, 2001.  (TR 382S).

The Appeals Council declined to review ALJ Bennett's decision. (TR 382A-382C). Plaintiff now seeks judicial review of the final decision of the Commissioner embodied in ALJ Bennett's determination.

II. Standard of Review

Judicial review of this action is limited to determining whether the Commissioner's decision is based upon substantial evidence and whether the correct legal standards were

applied.  Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992).  Because "all the ALJ's required findings must be supported by substantial evidence," Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999), the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence [the ALJ] chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects." Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996).  The court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992).  However, the court must "meticulously examine the record" in order to determine whether the evidence in support of the Commissioner's decision is substantial, "taking into account whatever in the record fairly detracts from its weight." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004)(internal quotation omitted).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i).  The Commissioner applies a five-step inquiry to determine whether a claimant is disabled.  See 20 C.F.R. § 404.1520(b)-(f) (2007); see also Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005)(describing five steps in detail). Where a *prima facie* showing is made that the plaintiff

4

has one or more severe impairments and can no longer engage in prior work activity, "the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity (RFC) to perform work in the national economy, given [the claimant's] age, education, and work experience." Grogan, 399 F.3d at 1261; accord, Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).

III. ALJ's Decision

Following the requisite sequential evaluation procedure, ALJ Bennett found that from August 27, 1999, to the date of the ALJ's decision Plaintiff had severe impairments due to COPD with recurrent bronchitis, sleep apnea, diabetes, migraine headaches related to her sleep apnea, a history of congestive heart failure, mild obesity, a history of possible tenosynovitis of her left upper extremity, reflex sympathetic dystrophy, fatty liver disease, dysthymia, recurrent depressive disorder, and panic disorder. (TR 382R).

Recognizing that Plaintiff's family physician opined in December 1999 that it was doubtful Plaintiff could hold a job, the ALJ rejected this assessment of Plaintiff's disability prior to May 1, 2002, on the basis that the assessment was not well supported by medically acceptable clinical and laboratory techniques or consistent with the other substantial evidence in the record. (TR 382O).  Specifically, the ALJ reasoned that although there was evidence in the record of ongoing medical treatment due to diagnoses of COPD, recurrent bronchitis, sleep apnea, diabetes, and migraine headaches associated with sleep apnea, after December 1999 and until May 2002 the treatment notes of Plaintiff's treating physicians only rarely listed sleep apnea and only intermittently listed headaches as treatment issues. (TR 382O).

5

The ALJ noted that this was "despite the fact that during the period from December 1999 and until May 2002 [Plaintiff] consistently reported that she was not receiving .... therapy to address her sleep apnea." (TR 382O).  Additionally, the ALJ reasoned that between December 1999 and until May 2002 there was no evidence Plaintiff experienced frequent or prolonged episodes of asthma or other exacerbations of her COPD and "prior to the May 2002 episode of congestive heart failure and the subsequent marked deterioration of the [Plaintiff]'s pulmonary function, the [Plaintiff]'s [COPD] was stable." (TR 382O).  With respect to Plaintiff's diabetes, the ALJ reasoned that Plaintiff had maintained good compliance with her prescribed treatment for this impairment and the condition had "remained well controlled without frequent or prolonged episodes of acute exacerbation, catastrophic events, organic disease, or neuropathies." (TR 382O).  Moreover, the ALJ reasoned that there was no evidence of persistent hypertension or persistent elevated blood pressures or persistent deterioration of liver function, that Plaintiff did not develop possible tenosynovitis of her left upper extremity until March 2002, and she did not develop problems with reflex sympathetic dystrophy or other musculoskeletal problems until after May 2002. (TR 382O).  The ALJ recognized that Plaintiff had been diagnosed with dysthymia and general pain disorder in March 1999 but reasoned that the diagnostic report did not include indications of more than moderate functional restrictions related to a mental impairment. (TR 382O-382P).  Additionally, the ALJ reasoned that from 1999 through March 2003 Plaintiff only intermittently sought treatment for depression from non-mental health professionals and was not referred to a mental health professional. (TR 382P).  The medical evidence,

6

according to ALJ Bennett, showed that Plaintiff's mental impairments increased and intensified on or after May 1, 2002. (TR 382P).  Employing the requisite analysis for determining the extent of the Plaintiff's functional restrictions related to a mental impairment, the ALJ concluded that from August 27, 1999, through April 30, 2002, Plaintiff's mental impairments had caused mild to moderate restrictions in her activities of daily living, mild to moderate difficulties in maintaining social functioning, mildly moderate deficiencies in concentration, persistence, or pace, and no episodes of deterioration or decompensation in work or work-like settings. (TR 382P).

In light of the evidence in the record, the ALJ concluded that from August 27, 1999, through April 30, 2002, Plaintiff had the residual functional capacity ("RFC") to perform skilled work at the light exertional level. (TR 382P).  Relying on the vocational expert's testimony with respect to the exertional requirements of Plaintiff's previous jobs, the ALJ concluded that Plaintiff had the RFC to perform her past relevant job as a travel agent from August 27, 1999, to May 1, 2002, and alternatively that Plaintiff had the transferable skills and the RFC to perform other sedentary jobs available in the economy during this time period, including the unskilled jobs of order clerk, touch up screener, and telephone clerk, and the skilled jobs of reception clerk, data entry clerk, and control clerk. (TR 382P-382Q). In light of these findings and conclusions, ALJ Bennett found that Plaintiff was not disabled within the meaning of the Social Security Act. (TR 382R-382S).

IV. Analysis

Plaintiff contends that the ALJ erred in failing to "consider both the combined effects

and severity of all of Claimant's impairments on all of claimant's conditions taken together...." Plaintiff's Brief, at 10. Her argument is less than concise, however, and does not refer to any specific portion of the ALJ's decision to support this conclusory statement. Moreover, Plaintiff fails to distinguish her references to the medical record in terms of the relevant time period at issue herein, which is the period between August 27, 1999, when the denial of Plaintiff's previous Title II application became final, see 20 C.F.R. § 404.957(c)(1)(recognizing *res judicata* application to previous administrative or judicial action on prior claim); Davis v. Astrue, 237 Fed.Appx. 339, 340, 2007 WL 1678094, *1 n. 1 (10th Cir. June 12, 2007)(unpublished op.); Fish v. Apfel, No. 99-5184, 2000 WL 979104, *4 (10th Cir. July 17, 2000)(unpublished op.)(ALJ was not required to consider evidence underlying claimant's first application in context of her second application), and December 31, 2001, when her Title II insured status expired. See Kepler v. Chater, 68 F.3d 387, 389 (10th Cir .1995)(claimant must show disability on or before date he or she was last insured for the purpose of Title II benefits); Henrie v. U.S. Dep't of Health & Human Servs., 13 F.3d 359, 360 (10th Cir. 1993)(same).   Because of the restricted nature of this Court's appellate review, the Court must determine whether there is substantial evidence in the record to support the ALJ's finding that Plaintiff was not disabled within the meaning of the Social Security Act AFTER August 27, 1999, and BY December 31, 2001.

The ALJ found Plaintiff was not disabled at step four of the sequential evaluation procedure, and alternatively, that Plaintiff was not disabled at step five.  At the fourth and fifth steps of the evaluation process required of administrative factfinders, the ALJ is

required to determine whether the claimant retains the RFC to perform the requirements of all past relevant work or, if claimant is found to be unable to perform his or her past relevant work, other work that exists in significant numbers in the economy.   At step four, the claimant bears the burden of proving an inability to perform the duties of the claimant's past relevant work. See Andrade v. Secretary of Health & Human Servs., 985 F.2d 1045, 1051 (10th Cir. 1993).  At this step, the ALJ must "make findings regarding 1) the individual's [RFC], 2) the physical and mental demands of prior jobs or occupations, and 3) the ability of the individual to return to the past occupation, given his or her [RFC]." Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 361 (10th Cir. 1993).

Plaintiff asserts that the ALJ failed to consider the "side effects [sic] her obesity and dysthymia and other mental impairments as well as her prescribed medications ... had on her ability to work." Plaintiff's Brief, at 11.  However, the ALJ's decision reflects thorough consideration of the medical evidence concerning Plaintiff's obesity and other exertional and nonexertional impairments and the functional restrictions related to  her mental impairments during the relevant period of time.  Plaintiff does not point to significantly probative medical evidence related to her obesity and dysthymia and the effects of her medications during the relevant time period that the ALJ failed to discuss.  The ALJ stated that he had considered the combined effects of Plaintiff's impairments in rendering his decision (TR 382R), and no error occurred in this regard.

Having reviewed the objective medical evidence, including Plaintiff's treating clinic's notes of treatment of Plaintiff between January 1999 and February 2002, the medical

9

evidence supports the ALJ's RFC finding of an ability to perform light work, or alternatively sedentary work, during the relevant period of time between August 27, 1999, and December 31, 2001. (TR 821-884). In January 1999 Plaintiff sought treatment for multiple medical conditions, including COPD, sleep apnea for which she used a C-Pap machine, panic disorder and claustrophobia related to a 1997 car accident and helped by anti-anxiety medication, migraine headaches occurring frequently in the mornings, a respiratory infection, and a boil. (TR 884). The treating physician prescribed narcotic pain medication for severe headaches, anti-anxiety medication, and anti-depressant medication. (TR 883). Her diabetic medication was changed in March 1999 because of poor control of this condition (TR 878), and the following month the physician noted Plaintiff's glucose levels showed good improvement. (TR 877). In July 1999 the treating physician at her clinic noted that Plaintiff was "[d]oing great in terms of the control of the diabetes [and] stress." (TR 864). Plaintiff's treating physician again noted in October 1999 that Plaintiff's diabetes was well controlled. (TR 857). Although her treating clinic's records reflect Plaintiff was treated with antibiotics for recurrent bronchitis, there is no evidence of persistent exacerbations of her obesity-related COPD or asthma during this period of time. Plaintiff testified that she had been on oxygen "for about three years, and off for about eight months" (TR 1043) but she was not clear as to the time period in which she required oxygen. Plaintiff's treating physician, Dr. Dawson, noted that Plaintiff required "[o]xygen for sleep apnea problems" in August 2001 and prescribed "[o]xygen at rest" for Plaintiff in November 2001. (TR 824, 827). There is no medical evidence in the record showing that Plaintiff's treating physicians prescribed the

continual use of oxygen during the relevant time period.  A chest x-ray performed in March 2001 was interpreted by the radiologist as showing mild cardiomegaly (enlarged heart) but no acute cardiopulmonary disease. (TR 562).  Plaintiff was consistently prescribed narcotic pain medication for "generalized aches and pains" by her treating physicians at her treating clinic. (TR 857).  However, in August 2000 Plaintiff's treating physician, Dr. Klaasen, noted that Plaintiff exhibited good, full range of motion. (TR 842).  In a physical examination conducted in March 2001 at her treating clinic, the treating physician noted that Plaintiff exhibited essentially normal range of motion except for some discomfort in the low back area with hip abduction and adduction as well as a slight decrease in grip strength on the right. (TR 828-829).  An abdominal x-ray of Plaintiff conducted in April 2000 was interpreted as showing degenerative changes in Plaintiff's hips, more severe on the right. (TR 673). However, Plaintiff's treating clinic's physicians noted that Plaintiff complained of right hip pain only twice during the relevant period, once in October 1999 and again in August 2001. (TR 827, 857).  Plaintiff's pain medications were refilled during the relevant time period, but no other treatment was prescribed. (TR 827).

Plaintiff refers to her testimony at the administrative hearing that "beginning in 2001 she had Reflex Sympathetic Dystrophy [RSD] causing swelling and constant, excruciating burning pain which felt like nails being driven into her left arm and requiring the use of morphine constantly." Plaintiff's Brief, at 11.  Plaintiff posits that "at this point in time ... she was disabled...." Id.  However, the medical record supports the ALJ's finding that Plaintiff was not diagnosed with reflex sympathetic dystrophy in her left upper extremity until June

2003, over one year after her insured status expired. (TR 382N, 794). There is nothing in the medical evidence showing that this impairment existed prior to June 2003. Thus, the ALJ did not err in failing to consider the combined effects of this impairment on Plaintiff's ability to work.[3]

Plaintiff contends that the ALJ erred in evaluating the credibility of Plaintiff's assertion of disability nonexertional impairments. To find that a claimant's pain is disabling, the "pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." Brown v. Bowen, 801 F.2d 361, 362-363 (10th Cir. 1986)(internal quotation omitted). "Subjective complaints of pain must be evaluated in light of plaintiff's credibility and the medical evidence." Ellison v. Secretary of Health & Human Servs., 929 F.2d 534, 537 (10th Cir. 1990).

In assessing the credibility of a subjective allegation of disabling pain, the ALJ must consider such factors as

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Hargis v. Sullivan, 945 F.2d 1482, 1489 (10th Cir. 1991); see Luna v. Bowen, 834 F.2d 161, 165-166 (10th Cir. 1987). "Credibility determinations are peculiarly the province of the

---

[3]Plaintiff makes only a conclusory assertion that the ALJ "failed to give proper weight to the opinions of Claimant's treating doctors." Because this contention lacks adequate factual and legal support, the contention will not be addressed herein.

finder of fact," and credibility determinations will not be upset "when supported by substantial evidence. Nevertheless, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." <u>McGoffin v. Barnhart</u>, 288 F.3d 1248, 1254 (10th Cir. 2002)(quotations and alteration omitted).

In support of her contention that the ALJ's credibility determination was not supported by adequate evidence, Plaintiff refers to the report of a consultative psychological examination of Plaintiff conducted in March 1999. (TR 284-286). However, the ALJ's decision reflects consideration of this report and the findings of the psychological examiner, Dr. Rasmussen, concerning the existence and severity of Plaintiff's mental impairments at that time. (TR 382N). The ALJ expressly recognized that Dr. Rasmussen's report of her consultative evaluation of Plaintiff included the diagnostic assessment of dysthymia and a chronic pain disorder associated with psychological factors and general medical conditions. (TR 382N). Thus, the ALJ did not ignore this probative evidence in determining the extent and severity of Plaintiff's mental impairments. Dr. Rasmussen completed a medical assessment of Plaintiff's mental ability to perform work-related activities. (TR 287-289). The physician's opinion based on her evaluation and testing of Plaintiff was that Plaintiff had only slight or moderate restrictions in her abilities to adjust to occupational demands. This medical assessment supports ALJ Bennett's finding that Plaintiff's mental impairments did not cause more than moderate functional limitations during the relevant time period. The ALJ's decision reflects his consideration of Plaintiff's subjective statements of disabling pain

and nonexertional impairments.  However, nowhere in the ALJ's decision does the ALJ give "controlling weight to Claimant's alleged ability to keep house for herself," as Plaintiff posits in her brief. Plaintiff's Brief, at 12.  Rather, the ALJ supported his RFC finding with specific references to the medical and nonmedical evidence.  There is substantial evidence in the record to support the ALJ's RFC finding, and the VE's testimony provides substantial evidence to support the ALJ's finding that Plaintiff retained the capacity during the relevant period of time to perform her previous job as a travel agent or, alternatively, that Plaintiff retained the capacity to perform other work at the sedentary level during the relevant time period.  No error occurred with respect to the ALJ's consideration of the evidence at the fourth step and, alternatively, the fifth step of the requisite evaluation procedure. Accordingly, the decision of the Commissioner denying Plaintiff's application for Title II benefits should be affirmed.

<u>RECOMMENDATION</u>

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING decision of the Commissioner to deny Plaintiff's application for Title II disability insurance benefits.  The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before <u>February 7th   </u>, 2008, in accordance with 28 U.S.C. § 636 and LCvR 72.1.  The parties are further advised that failure to file a timely objection to this Report and Recommendation waives their respective right to appellate review of both factual and legal issues contained herein. <u>Moore v. United States</u>, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this ____18th_____ day of ____January_____, 2008.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE

15